D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 982-2890
Fax: (510) 849-6141
vbaranetsky@revealnews.org

Shawn Musgrave (SBN *pending*)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 982-2890
Fax: (510) 849-6141
smusgrave@revealnews.org

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and IKE SRISKANDARAJAH, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendant. | Case No. _____ <br><br> **COMPLAINT FOR INJUNCTIVE RELIEF** |

## INTRODUCTION

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief. The Center for Investigative Reporting (hereinafter "CIR") and Ike Sriskandarajah (collectively "Plaintiffs") seek processing and release of agency records requested from Defendant U.S. Department of Homeland Security, Immigration and

Customs Enforcement (hereinafter "ICE").

2. In September 2021, Plaintiffs submitted a FOIA request to ICE for records related to the Human Rights Violators & War Crimes Center (hereinafter "HRVWCC"), a component of ICE established in 2008 to investigate perpetrators of human rights violations, war crimes, and other global atrocities.

3. To date, Defendant ICE has failed to comply with FOIA's statutory deadlines and has improperly withheld records responsive to these FOIA requests.

4. Plaintiffs have exhausted all administrative remedies.

5. Plaintiffs now ask the Court for an injunction requiring Defendant to promptly release the withheld records.

**JURISDICTION**

6. The Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and (a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1436, and 5 U.S.C. §§ 701–706.

**VENUE AND INTRADISTRICT ASSIGNMENT**

7. Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402. Plaintiff CIR has its principal place of business in this district.

8. Assignment to the San Francisco Division or the Oakland Division is proper pursuant to Local Rules 3-2(c) and (d) because a substantial portion of the events giving rise to this action occurred in Alameda County, where Plaintiff CIR's principal place of business is located and most actions in this case occurred.

**PARTIES**

9. Plaintiff CIR publishes *Reveal*, an online news site, at revealnews.org, and *Reveal*, a weekly public radio show with approximately 3 million listeners per week, as well as documentaries

and other media. Founded in 1977 as the first non-profit investigative news organization in the country, CIR has received multiple awards for its reporting. CIR is a non-profit established under the laws of the State of California, with its primary office in Emeryville, California.

10. Plaintiff Ike Sriskandarajah is a senior reporter and producer for *Reveal* and an employee of CIR. *Ike Sriskandarajah*, Reveal, https://revealnews.org/author/ikesriskandarajah/.

11. ICE is a component of Defendant U.S. Department of Homeland Security within the executive branch of the United States government and a federal agency within the meaning of 5 U.S.C. § 552(f). CIR is informed that ICE has possession and control of the records sought by its FOIA requests.

**FACTUAL BACKGROUND**

**ICE Possesses Records Containing Statistical and Other Information About War Criminals Living in the United States**

12. This case concerns records possessed by the Human Rights Violators & War Crimes Center (hereinafter "HRVWCC") within ICE, which was established by the Department of Homeland Security in 2008 as "the only government entity focused completely on investigating global atrocities and the perpetrators of human rights violations and war crimes." *Human Rights Violators & War Crimes Center*, ICE, https://www.ice.gov/features/human-rights-violators-and-war-crimes (accessed Dec. 13, 2021). A true and correct copy of this page is attached as Exhibit A.

13. The HRVWCC is led by Homeland Security Investigations (hereinafter "HSI") and partners with U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, and the Federal Bureau of Investigation, among other federal agencies, to catalogue and investigate human rights violators within the United States. *Id.*

14. According to the ICE:

> The HRVWCC leverages the knowledge and expertise of a select group of special agents, attorneys, intelligence analysts, criminal research specialists and historians who are charged

with preventing the United States from becoming a safe haven for individuals who engage in the commission of war crimes, genocide, torture and other forms of serious human rights abuses from conflicts around the globe.

*Id.*

15. ICE, HRVWCC, and HSI have all publicly stated that they maintain records containing statistical data on the number and characteristics of human rights violators within the United States. For instance, as of December 2021, HRVWCC and HSI stated that they had "more than 180 active investigations into suspected human rights violators and [were] pursuing more than 1,700 leads and removals cases involving suspected human rights violators from 95 different countries." *Id.*

16. As of October 2021, ICE stated it had "obtained deportation orders against and physically removed 1,085 known or suspected human rights violators from the United States" since 2003, and it also "has facilitated the departure of an additional 181 such individuals from the U.S." *Id.*

17. As part of its cataloguing efforts, HRVWCC also accepts "information about foreign nationals suspected of engaging in human rights abuses or war crimes" via ICE's phone tip line and online tip form. *Id.*

18. The Consolidated Appropriations Act of 2021 requires ICE to report to Congress information regarding HRVWCC cataloguing efforts, including the following:

> (1) the total number of prosecutions and investigations of human rights offenses and other offenses committed and their outcomes, delineated by serious human rights violators within each of the last five fiscal years;
> (2) efforts to increase the number of human rights investigations and prosecutions; and
> (3) any organizational, resource, or legal impediments to investigating and prosecuting more human rights violators.

Staff of S. Comm. on Appropriations and the H.R. Comm. on Appropriations, 116th Cong., *Joint Explanatory Statement on Division F: Department of Homeland Security Appropriations Act, 2021* at 28, Dec. 21, 2020, available at https://docs.house.gov/billsthisweek/20201221/BILLS-116RCP68-

JES-DIVISION-F.pdf.[1]  Congress directed ICE to submit this report "not later than 180 days after the date of enactment" of the Consolidated Appropriations Act of 2021, which was signed into law on December 27, 2020.  *See* Consol. Appropriations Act of 2021, Pub. L. No. 116-260, 134 Stat. 1182 (2020).  As of this date, almost a year later, ICE has not yet submitted this report to Congress.

19. Defendant ICE has failed to comply with FOIA, 5 U.S.C. 552(a)(6)(A)(i), which requires that an agency make determinations with respect to a request within 20 business days of receipt.

**PROCEDURAL BACKGROUND**

20. On September 13, 2021, Plaintiffs submitted a FOIA request to ICE seeking documents about the HRVWCC (hereinafter "FOIA Request").  A true and correct copy of the FOIA Request is attached as Exhibit B.  Plaintiffs requested:

1) "Internal reports about the work of the entity now known as HRVWCC, Homeland Security Investigations (HSI), and U.S. Immigration and Customs Enforcement (ICE) in their roles identifying, preventing admission, and removing perpetrators of foreign war crimes and human rights abuses from 2003 to 2021."
2) "Any and all reports, spreadsheets, data, names and countries of origin compiled by the HRVWCC to track the 460 individuals arrested for human rights-related violations, the 1,064 deportation orders issued against human rights violators in the US, and the 172 removals ICE facilitated from 2003 to 2021."
3) "Any and all reports, spreadsheets, data, names and countries of origin from Homeland Security Investigations (HSI) and HRVWCC accounting for the 155 active investigations into suspected human rights violators."
4) "Any and all reports, spreadsheets, data, names and countries of origin for the 1,675 leads HRVWCC and HSI are actively pursuing from 95 different countries."
5) "Any and all reports, spreadsheets, data, names and countries of origin for the 77,000 lookouts issued by the HRVWCC since 2003."
6) "Any and all reports, spreadsheets, data, names and countries of origin HRVWCC has contributed to stopping 333 human rights violators and war crimes suspects from entering the U.S. since 2003."
7) "Any and all foundational documents, reports, and memos establishing the role of ICE, HSI in investigating war criminals and human rights abusers in 2003, including documents from the pilot project of The Human Rights Violators and War Crimes Center in 2008 and when the HRVWCC became permanent in 2009."

---

[1] *See also* Press Release, H.R. Comm. On Appropriations, *House Democrats File Omnibus Spending Bill*, Dec. 21, 2020, https://appropriations.house.gov/news/press-releases/house-democrats-file-omnibus-spending-bill.

8) "All past investigations, cas[]e files, field reports, budgets, memos and multimedia records compiled by HRVWCC's four Regional Support Teams: Latin America, Africa, Europe/Balkans, and Asia/Middle East from 2008 to present."
9) "Copies of all tips and records of tips received by HRVWCC over email, online form, phone calls, voice messages, physical mail, or other means since their creation to now."
10) "A copy of the current staff directory for the HRVWCC staff directories with titles of the 50+ people currently with the unit, and annual directories from the inception of the unit . . . to the present."
11) "Any and all training materials used by the HRVWCC including recordings and multimedia from the 2016 training course at the Federal Law Enforcement Training Center in Georgia."
12) "A copy of the current budget for the Human Rights and War Crimes Unit and all historical budgets from the inception of the unit to the present."

Ex. B.

21. On September 28, 2021, after ICE failed to acknowledge the FOIA Request, Plaintiffs emailed ICE to request confirmation that the FOIA Request was received. A true and correct copy of this email is attached as Exhibit C.

22. ICE did not respond to Plaintiffs' request for confirmation of receipt.

23. Beginning on November 30, 2021, Plaintiffs also discussed the FOIA Request with staff in the ICE Office of Public Affairs (hereinafter "OPA"), including the fact that more than two months had passed without ICE assigning a tracking number. A true and correct copy of this email with ICE OPA is attached as Exhibit D. ICE OPA staff indicated they would pass along Plaintiffs' concerns to the ICE FOIA office. Ex. D.

24. On December 2, 2021, after Plaintiffs indicated that they were preparing to file this litigation, the ICE OPA confirmed it "did hear back from the Deputy FOIA officer and he said he would look into your request." A true and correct copy of this email with ICE OPA is attached as Exhibit E.

25. To date, ICE still has not provided any acknowledgment, tracking number, or final determination regarding the FOIA Request.

26. Defendant ICE has failed to comply with FOIA, 5 U.S.C. § 552(a)(7)(A), which

requires that an agency provide a tracking number.

27. Defendant ICE has failed to comply with FOIA, 5 U.S.C. § 552(a)(6)(A)(i), which requires that an agency make determinations with respect to a request within 20 business days of receipt.

28. Having exhausted all administrative remedies, Plaintiffs now seek injunctive relief.

## CAUSE OF ACTION

### Violation of Freedom of Information Act

29. Plaintiffs repeat and reallege paragraphs 1-28.

30. Defendant ICE is subject to FOIA and must therefore release in response to a FOIA request any disclosable records in its possession and must provide a lawful reason for withholding any materials as to which they claim an exemption.

31. Defendant ICE has failed to issue a tracking number as required by FOIA. *See* 5 U.S.C. § 552(a)(7)(A).

32. Defendant ICE has failed to issue a final determination as to the Request within the 20 business days required by FOIA. *See* 5 U.S.C. § 552(a)(6)(A)(i). Accordingly, Plaintiffs are deemed to have exhausted their administrative remedies under FOIA.

33. Plaintiffs are entitled to declaratory and injunctive relief compelling the expedited release and disclosure of the requested records.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs pray that this Court:

1. Declare that Defendant ICE violated FOIA by failing to provide a tracking number in response to Plaintiffs' request; by failing to provide requested records in response to Plaintiffs' request; and by failing to notify Plaintiffs of a final determination as to the request within the statutory time limit;

2. Declare that the documents sought by the Requests, as described in the foregoing paragraphs, are public under 5 U.S.C. § 552 and must be disclosed;

3. Order Defendant ICE to expeditiously provide the requested documents to Plaintiffs within 20 business days of the Court's order;

4. Award Plaintiffs the costs of this proceeding, including reasonable attorneys' fees, as expressly permitted by FOIA; and

5. Grant Plaintiffs such other and further relief as this Court may deem just and proper.

DATED: December 14, 2021

Respectfully submitted,

By: *s/ D. Victoria Baranetsky*
D. Victoria Baranetsky (SBN 311892)
Shawn Musgrave (SBN *pending*)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 982-2890
Fax: (510) 849-6141
Email: vbaranetsky@revealnews.org

Attorneys for Plaintiffs